IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TOBIN DON LEMMONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-13-494-D |
| ) | |
| MICHAEL HOUSTON, JEFF TROUTT, ) | |
| JANET DOWLING, KATRYNA FRECH, ) | |
| GENESE MCCOY, SAMMIE KENYON, ) | |
| JAMES HOWARD, DR. SHRINER, ) | |
| JOSEPH SMASH, DOES, LEONIDES BERMEJO ) | |
| CHERIAN KARUNAPUZHA, LORI IRWIN, ) | |
| GREGG BROOKS, KENYA SACKETT, ) | |
| FELICIA HARRIS, ROBERT PATTON, and ) | |
| JUSTIN JONES, in his individual capacity, ) | |
| ) | |
| Defendants. ) | |

**O R D E R**

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis* brings this action pursuant to 42 U.S.C. § 1983. In his Second Amended Complaint [Doc. No. 25], Plaintiff claims that prison officials acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. In addition, he claims other violations of his federal constitutional and statutory rights. He also brings claims for relief under state law.

Plaintiff timely objects to two Reports and Recommendations [Doc. Nos. 94 and 95] issued by Magistrate Judge Shon T. Erwin upon referral pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge issued a Report and Recommendation [Doc. No. 94] on February 2, 2015, and recommended dismissal of Plaintiff's § 1983 claims against Dr. Cherian Karunapuzha pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. He further recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff's

state law claims. One day later on February 3, 2015, the Magistrate Judge entered a Supplemental Report and Recommendation [Doc. No. 95] and recommended that summary judgment be entered in favor of Dr. Karunapuzha on Plaintiff's § 1983 claims. The Magistrate Judge again recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Plaintiff objects to both reports.

The Magistrate Judge entered a third Report and Recommendation [Doc. No. 101] on February 19, 2015, and recommended dismissal of Plaintiff's remaining claims and/or the entry of summary judgment in favor of the remaining defendants except Defendant Dr. Jeff Troutt. Dr. Troutt timely objects to the Report and Recommendation, and specifically to the Magistrate Judge's findings on the issue of the defense of exhaustion of administrative remedies and the recommendation that disputed issues of fact preclude summary judgment in his favor on Plaintiff's Eighth Amendment claim.[1] Plaintiff did not object to the February 19, 2015, Report and Recommendation.

The Court conducts a *de novo* review on the issues to which the parties have made specific objections; review of issues to which no specific objection has been made are waived. *See United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b)(3).

---

[1] In his objection, Dr. Troutt requests the Court to "modify" the recommendation and "dismiss" Plaintiff's claims against him based on a failure to exhaust administrative remedies or, alternatively, qualified immunity. However, Dr. Troutt relies on matters outside the pleadings, as did the Magistrate Judge when construing his motion as a motion for summary judgment. Therefore, the Court considers whether summary judgment is proper. *See* Fed. R. Civ. P. 12(d); Fed. R. Civ. P. 56.

## I. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.*

"The purpose of a summary judgment motion is to assess whether a trial is necessary." *Berry v. T–Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir.2007) (*citing White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995)). "In other words, there 'must be evidence on which the jury could reasonably find for the plaintiff.'" *Id.* (*quoting Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir.1995)).

Because Dr. Troutt contends he is entitled to qualified immunity from § 1983 liability as to Plaintiff's claims against him, the Court must also apply the specific analysis applicable to summary judgment motions asserting qualified immunity. *Toevs v. Reid*, 646 F.3d 752, 755 (10th Cir.2011). "The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant asserts qualified immunity at summary judgment, the responsibility shifts to the plaintiff to meet a "heavy, two-part burden." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). The plaintiff must show: (1) a violation of a constitutional right; (2) that was clearly established at the time of the conduct at issue. *Toevs*, 646

F.3d at 755. The Court may address the two showings in whatever order is appropriate under the circumstances. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If the plaintiff fails to satisfy either part of the two-part inquiry, the defendant is entitled to qualified immunity. *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir. 2008).

## II. Discussion

### A. Summary Judgment in Favor of Dr. Karunapuzha

In his Supplemental Recommendation [Doc. No. 95], the Magistrate Judge determined that the undisputed and material facts establish that Dr. Karunapuzha did not act with deliberate indifference to Plaintiff's serious medical needs.[2] Although the Magistrate Judge did not expressly vacate the initial Report and Recommendation [Doc. No. 94], the Magistrate Judge implicitly did so when he submitted the Supplemental Report and Recommendation one day later. The Court, therefore, considers whether Plaintiff's objection raises any meritorious grounds for challenging the entry of summary judgment in favor of Dr. Karunapuzha on his federal claims brought pursuant to § 1983.

The standard governing a prisoner's Eighth Amendment claim for deliberate indifference based on failure to provide medical care is well-established. A claim of deliberate indifference includes both an objective and a subjective component. *Mata v. Saiz*, 427 F.3d 745, 751 (10th

---

[2]In moving for summary judgment, Dr. Karunapuzha attached his affidavit in support thereof, but the affidavit was unsigned. *See* Affidavit of Cherian A. Karunapuzha, M.D. [Doc. No. 51-1]. The Magistrate Judge initially did not consider the affidavit because it was unsigned. *See* Report and Recommendation [Doc. No. 94] at 3. But the Magistrate Judge, in the Supplemental Report and Recommendation [Doc. No. 95], determined that Dr. Karunpuzha submitted a signed affidavit with his Reply. *See id*. at 2; *see also* Affidavit of Cherian A. Karunapuzha, M.D. [Doc. No. 72-1]. Therefore, the Magistrate Judge relied on the affidavit and recommended that summary judgment be entered in favor of Dr. Karunapuzha. Plaintiff raises no objection to the statements set forth in the affidavit or the Magistrate Judge's reliance thereon.

Cir.2005). The objective prong of the deliberate indifference test examines whether the prisoner's medical condition was "'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause." *Id.* at 753. The subjective prong examines the state of mind of the defendant, asking whether "the official kn[e]w of and disregard[ed] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiff's claims in this action, including his claims against Dr. Karunapuzha arise during his incarceration in the custody of the Oklahoma Department of Corrections (ODOC) at the James Crabtree Correctional Center (JCCC). The record establishes Plaintiff requires treatment for two types of seizure disorders. First, Plaintiff suffers from psychogenic non-epileptic seizures or "psuedoseizures." Prior to his incarceration at JCCC, Plaintiff's prescribed medication for treatment of the non-epileptic seizures was Klonopin. Second, Plaintiff suffers from epileptic seizures or generalized tonic-clonic seizures. Plaintiff's prescribed medication for treatment of the epileptic seizures has been Neurontin or Gabapentin.[3] Plaintiff also suffers from an anxiety disorder and panic attacks can trigger the non-epileptic seizures.

Dr. Karunapuzha is a neurologist. In December 2012, Plaintiff saw Dr. Karunapuzha for a neurological consultation, upon referral from Defendant Dr. Troutt, the ODOC doctor who provided

---

[3]As explained by the Magistrate Judge, *see* Report and Recommendation [Doc. No. 101] at 12, n. 4, Gabapentin is the generic formulation of Neurontin and Plaintiff was at various times prescribed one or the other form of the medication. The Court refers to the medication interchangeably.

5

treatment to Plaintiff.[4] *See* Special Report [Doc. No. 67] Exhibit 15 at 353-355.[5] Dr. Karunapuzha worked at the University of Oklahoma Health Sciences Center (OUHSC) at that time. The main purpose of the consultation was to address Plaintiff's continuing problems with psuedoseizures. Plaintiff reported to Dr. Karunapuzha that his tonic-clonic seizures were controlled by Gabapentin. *Id*. at 353. He wanted to be placed back on Klonopin for treatment of his pseudoseizures. Dr. Karunapuzha explained to Plaintiff that the drug Klonopin was not prescribed for long-term management of seizures. *Id*. at 355. Dr. Karunapuzha advised Plaintiff that he would require psychological counseling for his psuedoseizures and that he would be referred to the OUHSC Psychiaty Section for management of his anxiety and panic attacks because those triggered his psuedoseizures. *Id*. at 355. In his objection, Plaintiff does not take issue with any of the above treatment or recommendations provided by Dr. Karanapuzha.

After Plaintiff's consult, Defendant Dr. Troutt discontinued Plaintiff's Gabapentin. *Id*. at 356. Plaintiff contends that as a result, he began having epileptic seizures that had otherwise been controlled, in addition to the pseudoseizures. In January, February and May 2013, Plaintiff wrote letters to Dr. Karanapuzha and expressed concern that Dr. Troutt had discontinued his Gabapentin. *See* Plaintiff's letters [Doc. Nos. 72-2, 72-3 and 72-4, respectively]. In the January letter, Plaintiff requested that Dr. Karanapuzha "set the record straight" and advise Dr. Troutt to keep Plaintiff on Gabapentin for his epileptic seizures. *Id*. [Doc. No. 72-2].

---

[4]A third-year resident, Dr. Bermejo, also participated in the neurological consultation. Plaintiff dismissed his claims against Dr. Bermejo. *See* Plaintiff's Motion [Doc. No. 55], Stipulation of Dismissal [Doc. No. 60] and Order [Doc. No. 63].

[5]The Court references the Bates numbering on the documents submitted with the Special Report.

Although Plaintiff was not under Dr. Karanapuzha's continuing care, the doctor nonetheless responded to the first of Plaintiff's letters, advising as follows: "[s]ince your Grand Mal seizures (or Generalized tonic clonic seizures) were stable since feb 2011 no changes were made to it and so you should be on gabapentin 1200 mg twice a day." *See* Correspondence dated 1/17/2012 [Doc. No. 72-5].[6] Plaintiff does not dispute that Dr. Karanpuzha provided this response to him. Nor does Plaintiff provide any facts to demonstrate that Dr. Karanpuzha provided further treatment or that Plaintiff was under his continuing care.

In objecting to the Magistrate Judge's findings, Plaintiff's sole contention is that Dr. Karunapuzha ignored that the ODOC was "disregarding his plan of treatment." Contrary to Plaintiff's allegation, however, and as the Magistrate Judge found, "[o]nce Dr. Karunapuzha had examined Plaintiff and recommended a course of treatment, he had no authority to monitor or correct the prison doctor's decisions regarding Plaintiff's medication." *See* Supplemental Report and Recommendation at 4. Plaintiff fails to refute these facts. Indeed, the record establishes that a subsequent referral to the OUHSC for a neurological consultation, discussed more fully *infra*, was performed by a different doctor, further evidencing that Plaintiff was not under Dr. Karunapuzha's continuing care.

The Court concludes, therefore, that the undisputed material facts demonstrate that Dr. Karunpuzha is entitled to judgment as a matter of law as to Plaintiff's Eighth Amendment claim of deliberate indifference to his serious medical needs. Assuming, as the Magistrate Judge did, that the factual record supports a finding that the objective component of Plaintiff's deliberate

---

[6]The letter erroneously identifies the year as 2012. This is a typograpical error as clearly the letter was written in January 2013, one month after the December 2012 consultation.

indifference claim is established, *i.e.*, that he has demonstrated a sufficiently serious risk of harm based on his seizure disorder, he has not demonstrated the subjective component as to Dr. Karunpuzha. The undisputed factual record fails to show that Dr. Karunpuzha knew of and disregarded a substantial risk of serious harm to Plaintiff. The Court, therefore, ADOPTS the Magistrate Judge's Supplemental Report and Recommendation [Doc. No. 95] as to Plaintiff's § 1983 claim against Dr. Karunapuzha.

The Magistrate Judge further recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims against Dr. Karunapuzha and that those claims be dismissed without prejudice. The Magistrate Judge made this recommendation while also separately recommending that Plaintiff's federal claims proceed against Defendant Dr. Troutt.

Pursuant to 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction only when it has "dismissed *all* claims over which it has original jurisdiction." *Id.* (emphasis added). Thus, the Magistrate Judge prematurely recommended that the Court decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). Nonetheless, as set forth below, the Court finds, upon *de novo* review, that Dr. Troutt is entitled to the entry of summary judgment in his favor as to Plaintiff's federal claims. As a result, no federal claims remain and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, the state law claims against Dr. Karunapuzha are dismissed without prejudice to refiling.

### B. Denial of Summary Judgment as to Plaintiff's § 1983 Claims Against Defendant Dr. Troutt

Plaintiff also brings an Eighth Amendment claim against Dr. Troutt for deliberate indifference to Plaintiff's serious medical needs. Plaintiff's claim focuses primarily on Dr. Troutt's

8

decision to discontinue prescribing Neurontin for Plaintiff's epileptic seizures for a period of approximately eight months between January 2013 and September 2013.[7]

In January 2013, Dr. Troutt's treatment notes reflect under the heading "Plan of Action" the following: "*Per neurology recommendations* refer to psych services, wean neurontin." *See* Special Report, Exhibit 15 at 356 (emphasis added). The neurology recommendations referenced in Dr. Troutt's treatment notes are based on the neurology consult at OUHSC in December 2012 by Dr. Karunapuzha, as discussed above. A review of Dr. Karunapuzha's consultation notes establishes that he did not make any express notation that Plaintiff's Neurontin should be discontinued.

Dr. Karunapuzha's consultation focused treatment efforts on Plaintiff's psuedoseizures which Plaintiff was continuing to have. In the history section of Dr. Karunapuzha's consultation notes, it states that Plaintiff's last "grand mal" seizure occurred in February 2011 and that those seizures are "[c]ontrolled with gabapentin." *See id.* at 353. The Assessment identifies the following: (1) psychogenic non-epileptic seizures (PNES); generalized tonic-clonic seizures; and (3) anxiety disorder. *Id.* at 355. The Plan states in full:

> -refer to Psychiatry for management of anxiety; patient was previously on Klonopin and was discontinued last year, most likely will need anxiolytics as panic attacks seem to trigger the PNES
> -refer to psychological counseling for his non-epileptic seizures

---

[7]The Magistrate Judge noted that Plaintiff's complaint against Dr. Troutt also included his alleged delay in prescribing Neurontin to control Plaintiff's tonic-clonic seizures during the time period prior to the first neurological consult. *See* Report and Recommendation [Doc. No. 101] at 13. However, the Magistrate Judge appears to have focused the finding as to the subjective component of Plaintiff's deliberate indifference claim on Dr. Troutt's actions after the neurological consultation, when he discontinued Plaintiff's Neurontin. *See id.* at 25. The Court has reviewed the medical and other records as to Dr. Troutt's treatment of Plaintiff's seizures prior to the first neurological consult in December 2012, and finds nothing in those records which would support a claim that his conduct satisfies the subjective prong of a deliberate indifference claim.

>           -explained to the patient that Klonopin or benzodiazepines are not used for
>           long term management of seizures
>           -seizure precautions

*Id*.

On February 1, 2013, Plaintiff submitted an ODOC Request for Health Services and requested that he be put back on his medication for generalized tonic-clonic seizures. *Id*. at 358. In response, Dr. Troutt saw Plaintiff and noted that he requested to be put back on Neurontin. *Id*. at 362. Dr. Troutt's notes state: "Offender has had recent neurology consultation. Offender has not had a recent seizure or problem." *Id*. The "Plan of Action" states: "per neurology recommendations, notify of seizure activity, cpt and medicatio [sic], recheck prn, repeat neurology consult prn, per psych services recommendations per neurology recommendations." *Id*.

On February 19, 2013, Plaintiff again requested that he be put back on Neurontin. *Id*. at 366. He did not show for the appointment scheduled in response to the request. *Id*. at 368.

On March 20, 2013, Plaintiff made another request to be put back on Neurontin and an appointment was scheduled. Prior to the appointment, on April 29, 2013, Plaintiff had a seizure. *Id*. at 374-75.

On May 2, 2013, Plaintiff saw Dr. Troutt. Dr. Troutt's treatment notes state the following:

> Seizure Tuesday. First seizure in over a year. Offender states he has no injury from
> the seizure. Offender states he seized for one hour. Offender has a history of
> psuedoseizures. Offender last saw a neurologist in December. See neurology consult
> 12-12-12.

*Id*. at 379. Dr. Troutt's assessment was "psuedoseizure history" and his "Plan of Action" was "notify of problems, reviewed recent neurology consult recommendations, prn followup, reviewed previous notes and orders." *Id*.

Dr. Troutt next saw Plaintiff on May 29, 2013. *Id*. at 383-84. At that time, Plaintiff told Dr. Troutt he wanted to be placed back on Neurontin. *Id*. at 383. Dr. Troutt's diagnosis was that Plaintiff had suffered a nonepileptic seizure. He again referred to the neurology recommendations from the consultation on December 12, 2012. *Id*. at 384.

On June 17, 2013, Plaintiff requested to be seen by a doctor other than Dr. Troutt. *Id*. at 387. On July 3, 2013 he refused to see Dr. Troutt. *Id.* at 389.

On August 8, 2013, Dr. Troutt referred Plaintiff to the OUHSC for a neurology consultation. The reason for the appointment is listed as "F/U SEIZURES." *Id*. at 390. Under the heading "Instruction" the notes state: PLEASE SEE ADDENDUM TO 12/12/12 NOTE DATED 8/7/13 PER MEDICATION - GABAPENTIN." *Id*. at 390.

The referenced Addendum is signed by Dr. Bermejo and states: "Patient may continue gabapentin 1200 mg tid for now. Will schedule follow up in clinic." *Id*. at 382.

On August 20, 2013, Dr. Troutt saw Plaintiff "for review of his neurology recommendations." *Id*. at 393. Plaintiff's "chief complaint" is listed as psuedoseizures and Dr. Troutt's assessment was "PNES" or psuedoseizures. *Id*.

The next day, on August 21, 2013, upon referral from Dr. Troutt, Plaintiff had another neurological consult at the OUHSC. A different neurologist, Dr. William Bendure, examined Plaintiff. In the history section, Dr. Bendure notes that Plaintiff last had a grand mal seizure in February 2011 and that those seizures are controlled by gabapentin. *Id*. at 394. That section further states that Plaintiff "was on Klonopin for years and this was discontinued last Aug 2011. Since then he reports he has been having more psuedoseizures." *Id*.

Dr. Bendure's assessment was the same as Dr. Karunapuzha: (1) psychogenic non-epileptic seizures (PNES); (2) generalized tonic-clonic seizures; and (3) anxiety disorder. *Id.* at 396. Dr. Bendure's "plan" was to "restart Gabapentin." *Id.* The attending physician, Dr. Vaughn further noted:

> Mr. Lemmons is a 49 y/o left-handed man who re-presents to clinic for anxiety, psuedoseizures and cryptogenic epilepsy secondary to history of traumatic head injury. He was recently taken off his Gabapentin 1200 mg BID for uncertain reasons and c/o recurrent seizures. We will restart Gabapentin with rapid titration up (as above) to avoid untoward side effects and he was heavily counseled to continue with therapy for his anxiety and psuedoseizure components.

*Id.* at 396. In October 2013, Dr. Troutt re-started Plaintiff on Neurontin. *Id.* at 413.

The Magistrate Judge determined Dr. Troutt was not entitled to summary judgment on Plaintiff's Eighth Amendment claim. In the Report and Recommendation, the Magistrate Judge states: "It appears Dr. Troutt either *misread, misunderstood or disregarded* the assessment of the neurologists, who clearly stated Plaintiff suffers from both tonic clonic and psychogenic seizures." *Id.* at 20 (emphasis added). The Magistrate Judge further concluded:

> Dr. Troutt discontinued Neurontin after Plaintiff's examination by specialists confirmed the diagnosis of generalized tonic clonic seizures. Dr. Troutt's actions are not a simple disagreement regarding proper medication. Dr. Troutt discontinued medications approved by a specialist. The undersigned can think of no explanation for Dr. Troutt's actions other than his, either wilfully or recklessly, disregarding an excessive risk to Plaintiff's health or safety.

*Id.* at 25. In his objection, Dr. Troutt contends, based on the medical records, that he was not deliberately indifferent but "misunderstood the medical need, based on the information that was available to him." *See* Defendant Troutt's Objection [Doc. No. 104] at 13.

The Magistrate Judge's findings as to Defendant Troutt's subjective state of mind are inconsistent to a degree. On the one hand, the Magistrate Judge infers Dr. Troutt misread or

12

misunderstood the assessment of the neurologist. Such an inference supports a finding, at best, of negligence on the part of Dr. Troutt. On the other hand the Magistrate Judge infers Dr. Troutt *disregarded* the assessment of the neurologists. This latter inference could possibly support a finding of deliberate indifference. However, having reviewed the record as a whole, the Court respectfully disagrees with the Magistrate Judge's conclusion that Dr. Troutt's treatment records evidence that he consciously disregarded the assessment of the neurologists so as to support a finding of deliberate indifference.

The Court concludes, instead, that the only reasonable inference to be drawn from Dr. Troutt's medical records is that he misread or misunderstood the assessment of the neurologist. The Court finds support for this conclusion in *Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005). In *Mata*, the Tenth Circuit addressed a similar factual scenario involving a prisoner's claim that a nurse had been deliberately indifferent to her serious medical needs. The court discussed whether the nurse's notes in the prisoner's medical chart supported a finding that the nurse acted with deliberate indifference. In those notes, the nurse stated that the prisoner "was not having a heart attack" and that she told the prisoner to return if her condition worsened.[8] The court found that these notes provided "direct insight into Nurse Quintana's subjective state of mind." *Id*. at 760. As the court stated:

> Nurse Quintana's statement and notes demonstrate she *subjectively* believed Ms. Mata was *not* having a heart attack and her chest pain had been relieved. . . . Nothing in the record suggests . . . Nurse Quintana believed Ms. Mata was suffering 'severe chest pain,' when she released her, thereby *consciously* disregarding a *known* medical risk to Ms. Mata.

---

[8]The prisoner presented evidence that she suffered severe pain for several days and did, in fact, ultimately suffer a heart attack. *Id*. at 754.

13

*Id*. The court determined, therefore, that the nurse had made a "good faith effort" to diagnose and treat the prisoner's medical condition. *Id*. at 761. The court found that no reasonable jury could conclude the nurse acted with deliberate indifference and affirmed the district court's entry of summary judgment in favor of the nurse on grounds of qualified immunity.

Here, Dr. Troutt's treatment notes similarly provide insight into his state of mind. The notes reflect that he subjectively believed the neurologists had recommended that Plaintiff be taken off Neurontin when he stated that he was weaning Plaintiff off Neurontin "per neurology recommendations." The treatment notes also reflect that Dr. Troutt believed Plaintiff's seizures were due to the still uncontrolled psuedoseizures. Dr. Troutt never refused treatment to Plaintiff and when Plaintiff's seizure activity increased, he referred him for a second neurology consult. When the second neurologist directed that Plaintiff be put back on Neurontin, Dr. Troutt followed this directive.

The treatment records reflect a "good faith" effort by Dr. Troutt to provide appropriate medical care to Plaintiff. Clearly, Dr. Troutt was mistaken about whether Plaintiff should have been taken off the Neurontin. But that mistaken belief does not reflect deliberate indifference. "[A] misdiagnosis, even if rising to the level of medical malpractice, is simply insufficient under [Tenth Circuit] case law to satisfy the subjective component of a deliberate indifference claim." *Self v. Crum*, 439 F.3d 1227, 1234 (10th Cir. 2006). Even where a doctor's medical judgment may have been objectively unreasonable, the doctor's culpable state of mind is not established where the doctor mistakenly renders one course of treatment over another. *Id*.

Plaintiff suffers from independent conditions that each cause or contribute to seizures. Dr. Karanapuzha focused his consultation with Plaintiff on one condition, psuedoseizures. Dr. Troutt

misinterpreted how the "plan of action" recommended by that consultation bore on treatment of the other condition, epileptic seizures. Dr. Troutt facilitated Plaintiff returning for a second neurological consult and placed Plaintiff back on Neurontin following that consult upon direction of the neurologist. This conduct does not suggest the culpable state of mind required for deliberate indifference. Rather, Dr. Troutt's conduct demonstrates, at best, medical malpractice. In sum, Plaintiff has not met the "heavy burden" placed upon him to demonstrate a violation of his Eighth Amendment rights.

For these reasons, and upon *de novo* review of the grounds raised by Dr. Troutt's objection, the Court finds summary judgment in favor of Dr. Troutt is proper and that he is entitled to qualified immunity. Based on this finding, the Court need not address Dr. Troutt's objections raised as to the issue of exhaustion of administrative remedies.[9] The Court, therefore, DECLINES to adopt the Report and Recommendation [Doc. No. 101] as to Plaintiff's Eighth Amendment claim against Dr. Troutt and finds that Dr. Troutt is entitled to judgment as a matter of law in his favor on grounds of qualified immunity as to that claim.

### C. Plaintiff's Remaining Claims

---

[9]The Court notes, nonetheless, that Dr. Troutt's objection lacks support under Tenth Circuit authority. He contends Plaintiff did not exhaust administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (PLRA), because he did not request monetary damages through the prison grievance process. The Tenth Circuit has rejected this argument. *See Howard v. Waide*, 534 F.3d 1227, 1244 n. 9 (10th Cir. 2008) (rejecting PLRA exhaustion defense on grounds plaintiff did not request monetary damages during his grievance process and stating that a prisoner must exhaust "processes, not forms of relief") (citation and internal quotations omitted).

As to all remaining claims raised in Plaintiff's Second Amended Complaint, the Court ADOPTS the findings of the Magistrate Judge as fully set forth in the Report and Recommendation [Doc. No. 101] entered on February 19, 2015. The parties did not object to the findings of the Magistrate Judge as to any claims other than Plaintiff's Eighth Amendment claims regarding medical care by Dr. Karunapuzha and Dr. Troutt, as fully addressed herein. Therefore, the parties have waived any objections as to all other claims. Moreover, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over any remaining state law claims and dismisses those claims without prejudice to refiling.[10]

IT IS THEREFORE ORDERED that the Report and Recommendation [Doc. No. 94] is deemed VACATED by the Supplemental Report and Recommendation [Doc. No. 95].

IT IS FURTHER ORDERED that the Supplemental Report and Recommendation [Doc. No. 95] is ADOPTED as to Plaintiff's claims brought pursuant to 42 U.S.C. § 1983 against Dr. Karanapuzha and Dr. Karanapuzha is entitled to judgment as a matter of law in his favor.

IT IS FURTHER ORDERED that the Court DECLINES to adopt the Report and Recommendation [Doc. No. 101] as to Plaintiff's § 1983 claims against Defendant Dr. Troutt and GRANTS summary judgment in favor of Dr. Troutt on those claims.

IT IS FURTHER ORDERED that the Court ADOPTS the Report and Recommendation [Doc. No. 101] as to all remaining claims in Plaintiff's Second Amended Complaint against all remaining Defendants.

---

[10] The Magistrate Judge recommended dismissal of Plaintiff's state law claims raised in Count IV of the Second Amended Complaint on grounds of abstention rather than pursuant to the court's exercise of discretion under § 1367(c)(3). *See* Report and Recommendation [Doc. No. 101] at 34, n. 7 and 35. The Court, however, finds dismissal of all state law claims is proper pursuant to § 1367(c)(3) because no federal claims remain.

IT IS FURTHER ORDERED that the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses those claims without prejudice to refiling.

A separate judgment will be entered herewith.

IT IS SO ORDERED this 31st day of March, 2015.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE